IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL A. HUNT,

    Plaintiff,                    No. CIV S-04-0435 EJG JFM P

    vs.

COREY MCKAY, et al.,             ORDER AND

    Defendants.            FINDINGS & RECOMMENDATIONS

                            /

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. By the sole claim remaining in this action, plaintiff contends that his Fourteenth Amendment right to due process was violated when defendant Vance improperly placed plaintiff's name on a list of suspected or known Blood gang members, associates, or sympathizers, causing plaintiff to be locked down for a period of twelve days.[1]  This matter is before the court on defendant Vance's motion for summary judgment pursuant to Fed. R. Civ. P. 56.[2]

---

[1] Plaintiff's other claims were dismissed by order filed March 7, 2005.

[2] Plaintiff has filed a motion to strike the declarations of Lieutenant Keith Reed and Sergeant Anthony Murphy (Murphy Declaration), filed by defendant Vance in support of the motion for summary judgment, and Attachment F to the Murphy Declaration. Attachment F to the Murphy Declaration postdates by over two years the incident at bar and is irrelevant to the

1

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the

---

issues before the court. It will therefore be stricken, as will paragraph 18 and the first sentence of paragraph 19 of the Murphy Declaration. In all other respects, plaintiff's motion to strike will be denied.

1  allegations or denials of its pleadings but is required to tender evidence of specific facts in the
2  form of affidavits, and/or admissible discovery material, in support of its contention that the
3  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party
4  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
5  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
6  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
7  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
8  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
9  1436 (9th Cir. 1987).

10         In the endeavor to establish the existence of a factual dispute, the opposing party
11  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
12  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
13  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
14  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
15  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
16  committee's note on 1963 amendments).

17         In resolving the summary judgment motion, the court examines the pleadings,
18  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
19  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
20  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
21  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
22  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
23  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
24  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
25  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
26  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On June 10, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

ANALYSIS

In his motion for summary judgment, defendant Vance contends that he is entitled to summary judgment on plaintiff's Fourteenth Amendment claim because plaintiff's placement on lockdown status did not trigger a cognizable liberty interest. In the alternative, defendant Vance contends that he is entitled to qualified immunity.

I. Undisputed Facts

At all times relevant to this action, plaintiff was incarcerated at California State Prison-Sacramento (CSP-Sacramento), (Plaintiff's Declaration in Opposition to Defendant's Motion for Summary Judgment, filed December 15, 2005, passim), and defendant Vance was a correctional captain employed at CSP-Sacramento. (Ex. A to Defendant's Statement of Undisputed Facts, Declaration of Steve Vance, Correctional Captain, filed June 15, 2005, at ¶ 1.)

On September 5, 2002, a member of the Blood gang was "attacked and cut" by at least two other Blood gang members. (Plaintiff's Declaration, at ¶ 10; Vance Declaration at ¶ 3.) Following that incident, prison officials decided to temporarily lockdown all inmates believed to be affiliated with the Blood gang. (Plaintiff's declaration, at ¶ 10; Vance Declaration at ¶ 5.) Members of defendant Vance's staff generated a list identifying suspected Blood gang members, associates, or affiliates. (Vance Declaration, at ¶ 5.)[3] The list did not identify the inmates on the

---

[3] Defendant Vance avers that he did not generate the list and that he has no personal recollection of seeing or approving the list before it was used to lock down inmates. (Vance Declaration, at ¶ 11.) He also notes that it does not bear his signature. (Id.) The list nonetheless plainly identifies defendant Vance as the prison official ordering the lockdown. (Attachment E

4

list as Blood gang members. (See Attachment E to Defendant's Ex. B.) It was a programming list generated pursuant to staff investigation of the September 5, 2002 incident. (See Vance Declaration, at ¶ 12.)

Inmates whose name appeared on the list were locked down in their cells. (Vance Declaration, at ¶ 10.) Plaintiff's name was on the list. (Attachment E to Defendant's Ex.B.)[4] As a result, plaintiff was placed on lockdown status from September 5, 2002 until September 17, 2002. (Plaintiff's Declaration, at ¶¶ 10, 25.)

On October 30, 2002, an inmate grievance filed by plaintiff was granted in part by a correctional sergeant, who directed that plaintiff's designation be changed to non-affiliated. (Ex. J to Plaintiff's Declaration, at 9.) In a memorandum dated December 5, 2002, the Warden of CSP-Sacramento noted that plaintiff's "non-affiliated status" had been confirmed and his "Blood disruptive group designation" had been removed from "all facility gang lists and picture board." (Ex. J to Plaintiff's Declaration, at 11.)

II. Legal Standards

An essential element of plaintiff's due process claim is the existence of a liberty interest protected by the due process clause of the Fourteenth Amendment. See, e.g., Meachum v. Fano, 427 U.S. 215, 223-24 (1976). The United States Court of Appeals for the Ninth Circuit has held that neither California law nor the federal constitution provided a liberty interest in freedom from a prison lockdown that started with complete confinement to prison cells for two weeks and ended gradually over a six month period. See Hayward v. Procunier, 629 F.2d 599, 600-02 (9th Cir. 1980). In accordance with the rule announced in Hayward, plaintiff had no

---

to Ex. B.)

[4] The list contains at least two typographical errors. First, it is dated February 4, 2002. That is an obvious typographical error, as the memorandum describes an incident that occurred in September 2002. Second, the memorandum identifies the date of the incident as September 4, 2002. It appears, however, that the incident at issue occurred on September 5, 2002. The errors do not materially affect the matters at bar.

1  protected liberty interest in freedom from the fifteen-day lockdown to which he was subjected.

2  Relying on Bruce v. Ylst, 351 F.3d 1283 (9th Cir. 2003), plaintiff contends that he
3  has a protected liberty interest in freedom from improper validation as a prison gang member. In
4  Bruce, the court of appeals held that a decision to validate a prison inmate as a gang member
5  must be supported by "some evidence." Id. at 1287 (citing Superintendent v. Hill, 472 U.S. 445,
6  455 (1985).

7  Section 3378(c) of Title 15 of the California Code of Regulations sets forth a
8  detailed process for validation of prison gang members.[5] Plaintiff's arguments notwithstanding,

---

[5] (c) Gang involvement allegations shall be investigated by a gang coordinator/investigator or their designee.

(1) CDC Form 812-A or B shall be completed if an inmate/parolee has been verified as a member, associate, or dropout of a gang (prison gang or disruptive group) as defined in section 3000, or has safety concerns relating to gangs.

(2) Information entered onto the CDC Form 812-A or B shall be reviewed and verified by the gang coordinator/investigator to ensure that the identification of an inmate/parolee as a gang member or associate, or as having safety concerns is supported by at least three independent source items in the inmate/parolee's central file. The independent source items must contain factual information or, if from a confidential source, meet the test of reliability established in section 3321. The verification of an inmate/parolee identified as a gang dropout shall require a formal debriefing conducted or supervised by a gang coordinator/investigator.

(3) A member is an inmate/parolee who has been accepted into membership by a gang. This identification requires at least (3) independent source items of documentation indicative of actual membership.

(4) An associate is an inmate/parolee who is involved periodically or regularly with members or associates of a gang. This identification requires at least three (3) independent source items of documentation indicative of association with validated gang members or associates.

(5) A dropout is an inmate/parolee who was either a gang member or associate and has discontinued gang affiliation. This identification requires the inmate/parolee to successfully complete the debriefing process.

(6) The verification of an inmate/parolee's gang identification shall be validated or rejected by the assistant director, law enforcement and investigations unit (LEIU), or a designee. The validation and/or rejection of evidence relied upon shall be documented on a CDC Form 128-B2, Gang Validation/Rejection Review, and forwarded to the facility or parole region of origin for placement in the inmate/parolee's central file. Upon receipt of the CDC Form 128-B2, the Classification and Parole Representative or Parole Administrator I, or their designee, shall clearly note in some permanent manner upon the face of every document whether or not the item met

validation requirements.

(7) The CDC Forms 812-A and 812-B shall be reviewed by a classification committee at each annual hearing and upon any review for transfer consideration. This shall be documented on a CDC Form 128-G, Classification Chrono. Questionable gang identifications, notations, or new information shall be referred to the gang coordinator/investigator for investigation.

(8) The determination of a gang identification shall reference each independent source item in the inmate/parolee's central file. The sources shall be based on the following criteria:

(A) Self admission.

(B) Tattoos and symbols. Body markings, hand signs, distinctive clothing, graffiti, etc., which have been identified by gang coordinators/investigators as begin used by and distinctive to specific gangs.

(C) Written material. Any material or documents evidencing gang affiliation such as the membership or enemy lists, constitutions, organizational structures, codes, training material, etc., of specific gangs.

(D) Photographs. Individual or group photographs with gang connotations such as those which include insignia, symbols, or validated gang affiliates.

(E) Staff information. Documentation of staff's visual or audible observations which reasonably indicate gang affiliation.

(F) Other agencies. Information evidencing gang affiliation provided by other agencies. Verbal information from another agency shall be documented by the staff person who receives such information, citing the course and validity of the information.

(G) Association. Information related to the inmate/parolee's association with validated gang affiliates.

(H) Informants. Documentation of information evidencing gang affiliation from an informant shall indicate the date of the information, whether the information is confidential or nonconfidential, and an evaluation of the informant's reliability. Confidential material shall also meet the requirements established in section 3321.

(I) Offenses. Where the circumstances of an offense evidence gang affiliation such as where the offense is between rival gangs, the victim is a verified gang affiliate, or the inmate/parolee's crime partner is a verified gang affiliate.

(J) Legal documents. Probation officer's report or court transcripts evidencing gang affiliation.

(K) Visitors. Visits from persons who are documented as gang "runners", or community affiliates, or members of an organization which associates with a gang.

(L) Communications. Documentation of telephone conversations, mail, notes, or other communication, including coded messages evidencing gang affiliation.

1  the undisputed facts of this case show that placement of his name on the list generated by
2  defendant Vance's staff did not constitute validation of plaintiff as a member of the Blood gang.
3  A fortiori, the rule announced in Bruce does not apply to this case.
4         For all of the foregoing reasons, this court finds that plaintiff had no protected
5  liberty interest in either freedom from the twelve-day lockdown to which he was subjected after
6  the September 5, 2002 incident, or in freedom from placement of his name on the list of inmates
7  identified by defendant Vance's staff for lockdown after said incident.  Accordingly, defendant
8  Vance is entitled to summary judgment.
9         In accordance with the above, IT IS HEREBY ORDERED that plaintiff's
10 December 15, 2005 motion to strike is granted as to paragraph 18 of the Declaration of Sergeant
11 Anthony Murphy, the first sentence paragraph 19 of the Declaration of Sergeant Anthony
12 Murphy, and attachment F to the Declaration of Sergeant Anthony Murphy and denied in all
13 respects; and
14        IT IS HEREBY RECOMMENDED that defendant Vance's June 15, 2005 motion
15 for summary judgment be granted.
16        These findings and recommendations are submitted to the United States District
17 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
18 days after being served with these findings and recommendations, any party may file written
19 objections with the court and serve a copy on all parties.  Such a document should be captioned
20 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
21 shall be served and filed within ten days after service of the objections.  The parties are advised
22 /////
23 /////
24 ———————————
25 (M) Debriefing reports. Documentation resulting from the debriefing required by (c)(2), above.
26 tit. 15 CCR § 3378(c).

1 that failure to file objections within the specified time may waive the right to appeal the District
2 Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3 DATED: January 17, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

12
hunt0435.msj